UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOY NUNLEY, ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|         vs. ) | No. 4:20-CV-662 AGF |
| ) | |
| FERGUSON-FLORISSANT SCHOOL ) | |
| DISTRICT, ) | |
| ) | |
|         Defendant. ) | |

**MEMORANDUM AND ORDER**

Self-represented plaintiff Joy Nunley brings this employment discrimination suit against her former employer, Ferguson-Florissant School District, alleging wrongful termination based on a disability, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Now before the Court are two motions filed by plaintiff: a motion for leave to file this lawsuit out of time (ECF No. 2) and a motion for leave to commence this action without prepayment of the required fees and costs (ECF No. 4). Plaintiff seeks an extension of the 90-day deadline to file suit after receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has also submitted financial information indicating that she has insufficient funds to pay the filing fee. The Court will grant plaintiff's motion for leave to proceed without prepayment of fees and costs, and the filing fee will be waived in this matter. *See* 28 U.S.C. 1915(a)(1). However, after reviewing the complaint under 28 U.S.C. § 1915(e)(2), the Court finds that the allegations of the complaint fail to state a claim for employment discrimination based on a disability under the ADA. As such, this case will be dismissed for failure to state a claim upon which relief may be granted, and plaintiff's motion for leave to file this lawsuit out of time will be denied as moot.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded).

**The Complaint and Supplements**

Plaintiff Joy Nunley alleges that she was wrongfully terminated from her employment with defendant Ferguson-Florissant School District due to disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* ECF No. 1 at 1-2, 4-5. In her request for relief, plaintiff states: "I would like to know the truth for my termination, loss wages paid to me, unemployment and legal actions taken against the defendant." *Id.* at 6.

Plaintiff was a food service worker for the defendant school district from approximately August 2015 until her termination on October 14, 2019. ECF No. 1-1 at 2. On October 11 or 12, 2019,[1] plaintiff's immediate supervisor – the kitchen manager at the school cafeteria where plaintiff worked – accused plaintiff of calling her a bad name in front of the students. ECF Nos. 1 at 8, 1-1 at 2. The kitchen manager told plaintiff that she had read plaintiff's lips, heard plaintiff say the bad name, and that plaintiff had ten minutes. Soon after, the food service director arrived, and plaintiff was called into the kitchen office. Plaintiff alleges that the kitchen manager yelled at her for not wearing a hair net and gloves and for not clocking in and out on time. Plaintiff informed the kitchen manager that she always wears a net and gloves. The kitchen manager then asked plaintiff about her relationship with a male temporary co-worker. Plaintiff responded that she and "the other ladies" had liked him and thought him helpful until he started threatening people. When plaintiff asked why she was being questioned about him and how it related to the accusation against her, the kitchen manager told her "to respect her." *Id.* Next, the food service director interrupted plaintiff when she tried to say something and told her that "the district will be going in another direction" and to "go back to work." *Id.*

---

[1] Plaintiff states this date as "October 11, 2019," on the attachment to her complaint and in her rebuttal letter (ECF Nos. 1 at 8, 4 at 3), but as "[o]n or around 10/12/2019," on the Charge of Discrimination filed with the MCHR (ECF No. 1-1 at 2). The exact date has no significance for the Court's analysis here.

A few days later, on October 14, 2019, the food services director and the defendant school district secretary came to the school cafeteria where plaintiff worked.  Plaintiff was called into the office by the kitchen manager.  The director and secretary informed plaintiff that her employment with defendant was terminated.[2]   Plaintiff insisted that she had not called the kitchen manager a bad name.  The secretary responded that plaintiff should have been "gone a long time ago," and the director said that plaintiff was not a "good fit" for employment with defendant school district.  *Id.*  Plaintiff was escorted out of the building and later called the human resources department to complain of wrongful termination.  Plaintiff was told to submit her complaint in writing.  *Id.*

Attached to plaintiff's application to proceed without prepayment of fees or costs, plaintiff appears to have included the letter she sent to the defendant district's human resources department after her termination.[3]  ECF No. 4 at 3-4.  In this letter, plaintiff admits to having received two district policy violations prior to her termination – one verbal warning concerning an emotional confrontation with a co-worker about money missing from plaintiff's purse and one written warning after plaintiff responded to a prior cafeteria manager calling her a bad name.  *Id.* at 3.  Plaintiff concedes that she "responded in a manner that [she was] not proud of."  *Id.*  But plaintiff stated that she had been working hard with her vocational rehabilitation counselor to prevent future, similar incidents and that she had not had a violation since January 2018.

Next in her letter, plaintiff discusses the violation of the district's "Professional Relationships" policy that she received on October 11, 2019.  She states that she believes she was treated unfairly because there was no investigation conducted as to whether she used

---

[2] There is some confusion in plaintiff's pleadings as to whether she was actually terminated at this meeting or "placed on paid administrative leave and recommended for termination of employment." ECF Nos. 1 at 8, 4 at 3.

[3] The Court believes this letter to be plaintiff's written response to the defendant's human resources department because the letter is addressed to the name of the person who plaintiff says that she spoke with when she contacted human resources after her termination.  *See* ECF Nos. 1 at 8, 4 at 3.

profanity directed at the kitchen manager or anyone else.  Plaintiff describes the events of October 11, 2019, slightly differently in her letter than she did in her complaint.  In the letter, plaintiff states that she was called into the kitchen office by the kitchen manager to discuss concerns that plaintiff had been "over serving on the food line."  ECF No. 4 at 3.  After hearing the accusations, plaintiff was dismissed from the office before she could provide her side of the story.  According to plaintiff's recollection of the incident (which occurred on October 7, 2019), the kitchen manager had accused plaintiff of "over serving the tater tots or fries."  At the time, plaintiff responded to the accusation by stating that she was using the required 4 ounce serving spoon but that out of fairness to the kids, when some food fell off the spoon, she would try to replace it.  Plaintiff further explained that she did not think that this was wrong because she had been allowed to give extra to some children in the past.  Plaintiff also told the kitchen manager that she would watch her serving sizes in the future.  Plaintiff denied calling the kitchen manager a bad name a few days later, either "aloud or under [her] breath."  *Id.*  Attached to the letter, plaintiff filed a screen capture of a text string between plaintiff and another person dated October 2, 2019 through October 4, 2019.  *Id.* at 4.  In the text string, plaintiff states that a co-worker told her that plaintiff's supervisor and the food service director were "setting [her] up to get fired" by planning a confrontation with plaintiff where the kitchen manager gets plaintiff so upset that she starts yelling, just as the director arrives in the cafeteria.  *Id.*

After her termination, plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") on December 30, 2019, which was simultaneously filed with the Equal Employment Opportunity Commission ("EEOC").  ECF No. 1-1 at 2.  In the Charge, plaintiff alleges defendant discriminated against her based on a disability on October 14, 2019.  For the particulars on the Charge, plaintiff wrote only:

> In 8/2015 I was hired by the above named employer as a Food Service Worker. Karen David, Kitchen Manager, was my immediate supervisor. I was discharged on or around 10/14/2019.
>
> On or around 10/12/2019 I was accused of cursing at Karen David. Although I denied it to Antonio Adam, Food Service Director, [he] told me that the District will be going in another direction.
>
> For the above stated reasons, I believe that I was discharged based on my disability, in violation of the Americans with Disabilities Act, as amended.

*Id.* The same date as her charge filing, the EEOC issued plaintiff a right-to-sue letter. *Id.* at 1. That letter states: "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." *Id.*

**Motion for Leave to File Lawsuit Out of Time**

At the time of case initiation, along with her complaint in this matter, plaintiff filed a letter with the Court stating only: "I'm requesting in writing for a possible extension of my right to sue letter [d]ue to the covid-19." ECF No. 2. The Court construes this letter as a motion for leave to file this lawsuit out of time.

To initiate a lawsuit under the ADA, a plaintiff must timely file a charge of discrimination with the EEOC, receive a right-to-sue letter, and file suit within ninety (90) days of receipt of the letter. *See* 42 U.S.C. § 12117(a) (adopting procedures under § 2000e-5 for ADA claims); 42 U.S.C. § 2000e-5(e)(1), (f)(1) (requiring that Title VII claims be filed with EEOC within 300 days of alleged unlawful employment practice; if charge is dismissed by EEOC, aggrieved party may bring civil action within ninety days after notice of dismissal is given).

However, the 90-day filing period is akin to a statute of limitations, not a jurisdictional limit, and so it may be subject to equitable tolling. *Hill v. John Chezik Imports,* 869 F.2d 1122, 1123-24 (8th Cir. 1989) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). Despite this allowance, Courts have only found tolling – or in other words, extension – of the 90-

day filing period appropriate in "circumstances which were truly beyond the control of the plaintiff." *Id.* at 1124.  A plaintiff "who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cnty. Welcome Cntr. v. Brown,* 466 U.S. 147, 151 (1984).

**Discussion**

In this case, plaintiff filed her complaint in this matter on May 18, 2020 – 140 days after her right-to-sue letter was issued by the EEOC.  Plaintiff does not explain how the current COVID-19 pandemic delayed or prohibited her timely filing of this suit.  There is no doubt that the pandemic is "beyond the control of the plaintiff." *Hill*, 869 F.2d at 1124.  But plaintiff filed her suit fifty (50) days late with no explanation as to how the pandemic affected her filing, indicating a possible lack of diligence.

In any event, even liberally construing the allegations of plaintiff's complaint and supplements,[4] the Court finds that plaintiff fails to state a claim of employment disability discrimination under the ADA.  As such, this case will be dismissed for failure to state a claim, and plaintiff's motion for an extension to file out of time will be denied as moot.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, prohibits covered employers from discriminating against a "qualified individual" on the basis of disability. 42 U.S.C. § 12112(a).  To establish discrimination under the ADA, plaintiff must allege she (1)

---

[4] There are multiple factual incongruencies in plaintiff's filings.  First, she states in her complaint that she was terminated in the kitchen office on October 14, 2019. ECF No. 1 at 8.  However, in her letter to the defendant human resources department, she states that she was placed on paid administrative leave and with recommendation for termination on October 14, 2019. ECF No. 4 at 3.  Second, plaintiff states that she was called into the kitchen office on October 14, 2019 and accused by the kitchen manager of not wearing her hairnet and gloves, and of not properly clocking in and out. ECF No. 1 at 8.  However, plaintiff's letter to the human resources department states that she was called into the kitchen office on that date to face accusations of over serving in the food line. ECF No. 4 at 3.  The Court finds that these factual confusions are irrelevant to the analysis here.  Regardless of which version of events occurred, the Court still finds the allegations of plaintiff's pleadings insufficient to state a claim of ADA disability discrimination.

is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability. *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The threshold inquiry of determining whether plaintiff is disabled within the meaning of the ADA requires an individualized analysis of the effects of the claimed impairment on plaintiff's life activities. *Mathieu v. Gopher News Co.*, 273 F.3d 769, 775 (8th Cir. 2001).

Here, plaintiff has not sufficiently plead a disability cognizable within the ADA – or even a disability at all. Although plaintiff alleges discrimination based on a disability, nowhere in her pleadings does she state what her disability is. Nor does she describe how any such disability impairs or substantially limits any major life activities. Plaintiff simply states that she "believes that she was discharged based on [her] disability," without naming or describing any disability. ECF No. 1-1 at 2. Her pleadings fail to allege any facts from which a disability can even be inferred. Even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin*, 623 F.2d at 1286; *see also Stone*, 364 F.3d at 914-15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). Because plaintiff fails to state sufficient factual allegations to find that she is disabled within the meaning of the ADA, her claim of disability discrimination under the ADA must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 4] is **GRANTED**, and the filing fee is waived**.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendant Ferguson-Florissant School District because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendant are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file lawsuit out of time [ECF No. 2] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 15th day of July, 2020.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE